## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

KIRK OCHOA,

Plaintiff,

- v -                                                    Civ. No. 9:05-CV-1068
                                                              (GLS/RFT)

SUSAN A. CONNELL, *Supt., Oneida Corr. Fac.*;
EVANS, *Corr. Officer*; LAGASSE*, Corr. Officer*;
WYBORSKY, *Corr. Officer*; RUTH, *Corr. Officer*;
ENGLEBURT, *Corr. Officer*; FLISNIK, *Corr. Officer*,[1]

Defendants.

**APPEARANCES:**                        **OF COUNSEL:**

KIRK OCHOA
Plaintiff, *Pro se*
*Last Known Address*[2]
c/o Jennifer Godfry
3337 Mickle Ave.
Bronx, New York 10469

HON. ANDREW M. CUOMO                     CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
New York State Department of Law
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

---

[1] Defendants' counsel informs the Court that Plaintiff misspelled some of the Defendants' names and counsel has provided us with the correct spellings to which the Court will utilize: Donald L. Engelbrecht & John T. Wyborski.

[2] On September 4, 2007, Ochoa wrote a letter to the Court indicating that since he was set to be released from custody on September 6, 2007, and since he did not yet have any permanent address, he provided an address where he could receive mail. Dkt. No. 49. A review of the Department of Correctional Services Inmate Locator website, *available at* http://nysdocslookup.docs.state.ny.us/kinqw00, confirms that on September 6, 2007, Ochoa was released on parole.

On August 25, 2005, Kirk Ochoa filed a *pro se* civil rights Complaint alleging he was denied access to the Yellow Pages and thereby prevented from locating an attorney.  Dkt. No. 1, Compl. In reviewing the adequacy of that pleading, the Honorable Gary L. Sharpe, United States District Judge, observed that Plaintiff failed to state a cause of action for denial of access to the courts and the only named Defendant, Superintendent Susan Connell, was not personally involved in any alleged wrongdoing.  Dkt. No. 8, Order, dated Oct. 31, 2005.  Accordingly, Judge Sharpe granted Plaintiff an opportunity to file an amended complaint that "allege[s] claims of misconduct or wrongdoing against the Defendant[] which Plaintiff has a legal right to pursue[.]"  *Id*. at p. 4.

In compliance with Judge Sharpe's dictate, Ochoa filed an Amended Complaint extrapolating on the claim alleged in his initial Complaint and adding new claims and Defendants.  Dkt. No. 11, Am. Compl.  More specifically, by his Amended Complaint, Plaintiff contends that Defendants violated his right to exercise his religion, impeded his access to the courts, retaliated against him for exercising his constitutional rights, and subjected him to excessive force and inhumane living conditions.  *See generally id.*

Presently pending is Defendants' Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  Dkt. No. 37.  Despite being given ample opportunity to respond to the Motion, Plaintiff has not submitted any opposition.[3]  *See* Dkt. Nos. 41, 44, & 45.  For the reasons set forth below, we recommend Defendants' Motion be **granted** and Plaintiff's Amended Complaint be **dismissed**.  It is further recommended that this dismissal be pursuant to 28 U.S.C. §§

---

[3] Ochoa twice requested extensions of time to file opposition to Defendants' Motion. Dkt. Nos. 41 & 44.  In addition to granting these requests, the Court *sua sponte* provided a third extension of time for Ochoa to respond to the pending Motion.  *See id.* & Dkt. No. 45.  Instead of submitting a response to the Motion, Ochoa asked the Court for courtesy copies of motions and decisions filed since September 29, 2006; this request was addressed in a separate Order. *See* Dkt. Nos. 46 & 47.  We note for purposes of the current pending Motion that such Motion was filed on August 31, 2006, and thus does not appear to fall within the panoply of documents Plaintiff asserts he lost.

1915(e)(2)(B)(i) & (iii) as frivolous and failing to state a cause of action.

## I. FACTS

The following facts are derived from the Amended Complaint, which, in accordance with the standard of review explained below, must be taken as true.[4]  All allegations contained in the Amended Complaint occurred during Ochoa's incarceration at Oneida Correctional Facility during the period of May through September 2005.

**Interference with Religion**

On May 13, 2005, Ochoa was transferred to Oneida and placed, for reasons unknown to the Court, in V-Dorm Protective Custody.  Am. Compl. at ¶ 8.  At some point, Defendant Officer John Evans entered Plaintiff's cell and interrupted his prayer by uttering derogatory remarks about Muslims, the Koran, and black men.[5]  *Id*.  Ochoa does not specify the date(s) on which Evans interrupted his prayer nor does he enumerate how many occasions such disruption occurred.  After this incident, Plaintiff wrote various letters to the United States Department of Justice (DOJ) (Special Litigation Section Civil Rights Division), the New York State Commission of Correction, as well as a personal friend who works for an unnamed state assembly person, complaining of, *inter alia*, Defendant Evans' conduct.  *Id*.; Dkt. No. 11-2 at pp. 1-3 (Lts. from Ochoa to State Comm'n of Corr., dated May 30, 2005 & July 10, 2005); pp. 7-8 (Lt. from Ochoa to personal friend, dated

---

[4] Plaintiff's Amended Complaint and many of the Exhibits attached thereto are hand-written and at times difficult to discern. When applicable, this Court has referred to the voluminous Exhibits attached to Plaintiff's Amended Complaint to help decipher certain dates and substantive claims.  Plaintiff attached approximately 180 pages of Exhibits to his Amended Complaint and he fluctuates between labeling his Exhibits by numbers or letters, sometimes employing a combination of the two.  Due to the size of the Exhibits, Court staff split his Exhibits into two Attachments to the Amended Complaint.  For ease of reference, the Court will disregard Plaintiff's labeling and instead refer to the Exhibits by the page number in which they appear in the Court's Docket.

[5] Incidentally, the Court takes judicial notice of the fact that according to the Department of Correctional Services Inmate Locator website, *available at* http://nysdocslookup.docs.state.ny.us/kinqw00, Plaintiff is a white male.

June 13, 2005); pp. 9-12 (Lts. from Ochoa to U.S. D.O.J., dated May 29, 2005 & June 14, 2005).

This encounter between Evans and Ochoa, as well as the ensuing letters and the Inmate Grievance

Ochoa authored (*see* below) appear to form the basis for Ochoa's retaliation claims against

Defendants Evans and Correction Officer Donald Englebrecht.

**Retaliation Claim Against Defendant Evans**

On June 6, 2005, Officer Evans issued Ochoa a Misbehavior Report for violating Prison

Rules 106.10 (refusal to obey a direct order) and 107.10 (physical or verbal obstruction or

interference with an employee).  Am. Compl. at ¶ 8; Dkt. No. 11-2 at p. 17 (Inmate Misbehavior

Rep., dated June 6, 2005).  Plaintiff asserts that the Misbehavior Report was issued for retaliatory

reasons, possibly in response to the many letters Plaintiff sent to outside officials.  Am. Compl. at

¶ 8.  Thereafter, Ochoa submitted an Inmate Grievance, dated June 9, 2005, but date-stamped

"Received" on June 14, 2005, complaining of Defendant Evans' behavior towards him and seeking

an investigation of Officer Evans.  Am. Compl. at ¶ 8; Dkt. No. 11-2 at p. 18 (Inmate Grievance #

ONI-9137-05, dated June 9, 2005).  On July 7, 2005, Defendant Superintendent Connell denied

Plaintiff's Grievance as unfounded.[6]  Am. Compl. at ¶ 8; Dkt. No. 11-2 at p. 19 (Supt. Connell's

Decision, dated July 7, 2005).  Plaintiff appealed this resolution to the Central Office Review

Committee (CORC) who upheld the Superintendent's decision.  Am. Compl. at ¶ 8; Dkt. No. 11-2

at pp. 19-22 (Pl.'s Appeal, dated July 14, 2005, & CORC Decision, dated Aug. 10, 2005).

**Interference with Access to the Courts**

At an unspecified date, Plaintiff made a request to an unspecified individual for a copy of

---

[6] In light of Plaintiff's allegation of harassment by an employee, it is possible that this Grievance was forwarded directly to the Superintendent pursuant to the informal grievance procedure set forth in N.Y. COMP. CODE R. & REGS. tit. 7, § 701.8.

the 2005 Lawyers Diary and the Yellow Pages phone book so that he could hire an attorney. Am. Compl. at ¶ 8. On May 24, 2005, Ochoa received a response to his request wherein he was told that the 2005 Lawyers Diary was at that time unavailable to SHU population, though a copy of the 2003 Lawyers Diary was provided. Dkt. No. 11-2 at p. 30 (Lt. to Ochoa from Law Library Admin., dated May 24, 2005). On June 6, 2005, the Law Library Supervisor denied Plaintiff's request and informed Plaintiff that the "facility Law Library and General Library are NOT ALLOWED to have ANY telephone directories. This is <u>CONTRABAND</u>." Am. Compl. at ¶ 8; Dkt. No. 11-2 at p. 25 (Lt. to Ochoa from Law Library Supervisor, dated June 6, 2005) (emphasis in original). It appears that further correspondences were exchanged between Ochoa and the law library staff wherein staff endeavored to help Plaintiff obtain various attorneys' addresses. Dkt. No. 11-2 at p. 31 (Lt. to Ochoa from Law Library Admin., dated Aug. 4, 2005). Plaintiff does not allege that any of the named Defendants played any role in the denial of his access to the Yellow Pages.

On August 12, 2005, Ochoa asked permission from Defendant Officer Richard Flisnik to make a non-monitored, legal phone call. Am. Compl. at ¶ 12. Officer Flisnik denied the request and referred Plaintiff to Superintendent Connell, who similarly upheld the denial. *Id*. On September 6, 2005, Plaintiff again asked Officer Flisnik if he could make a non-monitored, legal phone call, which was again denied. *Id*. Flisnik advised Plaintiff he should put the attorney's name on his call list and call the attorney collect. *Id*. Plaintiff expressed his frustration with the denial of his privileged legal calls. *Id*.

**Excessive Force and Retaliation Claims Against Defendant Engelbrecht**

On June 10, 2005, Plaintiff was transferred to the W-Dorm in SHU. *Id*. at ¶ 10. While in the frisk room, Defendant Correction Officer Donald Engelbrecht slammed his forearm into the back

of Ochoa's head, which caused Ochoa to slam into the wall. *Id*. Though Plaintiff asserts in his

Amended Complaint that he posed no threat at the time he was struck since his hands were on the

wall, the Inmate Grievance he submitted on this issue indicates, in his own words, that he was in the

process of removing his shirt as directed and was struck due to his failure to wait for a command to

move. *Compare id*. *with* Dkt. No. 11-2 at p. 36 (Inmate Grievance # ONI-9135-05, dated June 12,

2005). Plaintiff believes Defendant Englbrecht struck him in retaliation for "writing up" Defendant

Evans. Am. Comp. at ¶ 10.

## **Inhumane Living Conditions**

Defendant Officer John Wyborski denied Plaintiff access to the shower five times during the

period of May 28 through July 30, 2005. *Id*. On June 27, 2005, Officer Wyborski denied Plaintiff

a "go around" as punishment for Plaintiff talking out of a window. *Id*. Defendant Officer Donald

LaGasse and Defendant Englebrecht denied Plaintiff access to mandatory recreation ("rec") eleven

times during the period of June 29 through August 1, 2005. Defendant LaGasse rebuffed Plaintiff's

oral complaints regarding the treatment he was receiving. *Id*. Plaintiff refers to the practice of

denying mandatory rec and showers as "The Burn" and asserts it is illegal. *Id*. at ¶ 11; *see also*, *e.g.*,

Dkt. No. 11-2 at p. 47 (Lt. from Ochoa to Oneida County District Attorney, dated Aug. 2, 2005)

(referring to the illegality of "The Burn").

## **II. DISCUSSION**

### **A. Standard of Review**

"Judgment on the pleadings is appropriate where material facts are undisputed and where

a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers*

*v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). In applying Rule

12(c), a court must utilize the same standard as that applicable to a motion under Rule 12(b)(6).  *The Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).  On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all factual allegations in the complaint.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (citation omitted).  Further, "the court should construe the complaint liberally and draw inferences from the plaintiff's allegations in the light most favorable to the plaintiff."  *Tamayo v. City of New York*, 2004 WL 137198, at *5 (S.D.N.Y. Jan. 27, 2004) (citing *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999)).  The court need not credit conclusory statements unsupported by assertions of facts nor legal conclusions and characterizations presented as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), and must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint, *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, __ U.S. __ 127 S.Ct. 1955, 1974 (2007).[7]  The Court of Appeals for the Second Circuit has recently interpreted the foregoing language as requiring that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*[,]"

---

[7] By its recent opinion in *Bell Atlantic*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1968 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id.* at 1969.

but does not require a heightened pleading standard for civil rights claims. *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

### B. Personal Involvement

As an initial matter, we address the inclusion of Correction Officer Dennis Ruth in this lawsuit. It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Though Defendant Ruth is named as a party in Plaintiff's Amended Complaint, his name is mentioned only once in the body of that pleading, and even then, only in passing. Am. Compl. at ¶ 10. Without any specific factual allegation implicating Ruth in some wrongdoing, Plaintiff fails to state a cause of action pursuant to § 1983. Accordingly, we recommend **dismissing** Defendant Ruth from this lawsuit due to his lack of personal involvement.

Similarly, there are multiple instances wherein Plaintiff fails to specify which claims are being asserted against which Defendant. To the extent practicable, we have employed a liberal reading of the Amended Complaint and interpreted it so as to raise the strongest arguments suggested therein. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *McDonald v. Gonzales*,

2007 WL 951445, at *1 (N.D.N.Y. Mar. 27, 2007). As evidenced by the amount of analysis that follows, because of the nature of Plaintiff's anorexic pleading, our task of liberally interpreting the pleading was massive. As noted throughout this decision, we do not construe Plaintiff's general allegations as against all Defendants in the absence of any allegations of a particular Defendant's personal involvement. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.").

Finally, we note that Ochoa has named Superintendent Connell as a Defendant herein. There are only two instances where Ochoa complains of acts personally committed by Connell. The first allegation concerns Connell's denial of Ochoa's Grievance against Evans, while the second allegation concerns Connell's assent that Ochoa could not make an unmonitored call. Beyond these allegations, which we address below, it appears that Superintendent Connell's inclusion in this lawsuit is due to her supervisory position in the facility. The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if she: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v.*

*Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply because he holds a high position of authority). Since, as explained more fully below, we find no constitutional violations have occurred under the facts pled, no supervisory liability can be imputed to Defendant Connell.

## C. Free Exercise Claim

Within Plaintiff's Amended Complaint is a heading entitled "Legal Claims" wherein Ochoa asserts, *inter alia*, he was denied his constitutional right to exercise his religion when his prayer was interrupted by "racist" and "violent" comments. Am. Compl. at ¶ 14. Though he does not specify which Defendant he asserts this claim against, a liberal reading of the entire Amended Complaint compels the conclusion that he holds Defendant Evans responsible for impeding his ability to engage in religious prayer in his cell.[8]

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I.[9] These provisions are applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (cited in *Wares v. D.A. Vanbebber*, 319 F. Supp. 2d 1237, 1247 (D. Kan. 2004)). Prisoners retain their right to religious freedom even when incarcerated. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). Such rights, however, are balanced

---

[8] In any event, as previously intimated, Plaintiff's failure to allege that other Defendants were personally involved in the alleged denial or interruption of his free exercise of religion is fatal to his attempt to assert such a blanket claim against all Defendants. *See McKinnon v. Patterson*, 568 F.2d at 934; *see also Polk County v. Dodson*, 454 U.S. at 325 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 674).

[9] Nowhere in Plaintiff's Amended Complaint does he state that his rights pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq.*, have been violated and thus we only consider his free exercise claim under the First Amendment.

against the "interests of prison officials charged with complex duties arising from administration of the penal system." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Free exercise claims of prisoners are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003).

Pursuant to this reasonableness test, a prison regulation that impinges upon an inmate's constitutional rights may be valid, despite such encroachment, if it is reasonably related to legitimate penological interests. *Turner v. Safely*, 482 U.S. 78, 89 (1987); *Farid v. Smith*, 850 F.2d at 925. In this case, Ochoa simply asserts that Defendant Evans interrupted his prayer; he does not claim that a prison regulation or policy was the basis for the interruption. Nevertheless, an individualized decision to "deny a prisoner the ability to engage in some requested religious practice" is analyzed in the same manner as a prison regulation denying such exercise. *Ford v. McGinnis*, 352 F.3d at 595 n.15 (citing *Young v. Coughlin*, 866 F.2d 567 (2d Cir. 1989)).

In free exercise cases, the inmate "need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own scheme of things, religious.'"[10] *Fifth Ave. Presbyterian*

---

[10] Defendants put forth a slightly different free exercise analysis, which we do not adopt here. Relying on *Ford v. McGinnis*, 352 F.3d 582 (2d Cir. 2003) and *Sherbert v. Verner*, 374 U.S. 398 (1963), Defendants contend that Plaintiff must demonstrate, in addition to establishing a sincerely-held religious belief, that a substantial burden was placed upon his religious exercise by a State Defendant. Dkt. No. 37-2, Defs.' Mem. of Law at pp. 5-8. We have declined to adopt this approach because we believe that it is not entirely clear in this Circuit whether a prisoner plaintiff complaining of religious infringement must, as a prerequisite to stating a <u>constitutional</u> free exercise claim, establish that the prison policy at issue "substantially burdened" the free exercise of his religion. The high scrutiny test established in *Sherbert v. Verner* was modified to a less rigorous, more deferential test when applied to claims arising out of a prison context, *see O'Lone v. Estate of Shabazz*, 482 U.S. at 342, wherein officials need only show that burdens placed upon an inmate's free exercise are reasonably related to legitimate penological interests; such modification, however, made no mention of a prisoner's continuing obligation to demonstrate that the burden at issue was substantial. *Id.* In *McEachin v. McGuinnis*, the Second Circuit similarly questioned whether a prisoner is required to show that a substantial burden existed when a constitutional free exercise claim is asserted. *See* 357 F.3d 197, 202 (2d Cir. 2004). In rendering its analysis, the Court acknowledged that at least one Circuit Court, the Third Circuit, had explicitly rejected the substantial

*-11-*

*Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)); *see also Ford v. McGinnis*, 352 F.3d at 588; *Allah v. Walker*, 2005 WL 927619, at *6 (N.D.N.Y. Apr. 20, 2005) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)).  Ochoa's feeble pleading fails to address this initial hurdle.  Nowhere in Plaintiff's Amended Complaint does he assert what religion he adheres to, though a liberal reading could lead us to the conclusion that he is a Muslim.  The failure to assert a specific denomination is not the *fait d'complit* of his free exercise claim since a claimant "need not be a member of a particular organized religious denomination to show sincerity of belief."  *Jackson v. Mann*, 196 F.3d at 320 (citing *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834 (1989)).  Furthermore, we readily concede that in liberally construing Plaintiff's pleading, the act of prayer could possibly be, in Plaintiff's "own scheme of things," an act that is religious in nature.  What gives us pause is the absence of <u>any</u> statements from which a reasonable person could deduce whether and to what extent Ochoa's beliefs as a Muslim are sincerely held.

---

burden analysis as violating the precept articulated in *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990), that "courts must not presume to determine the place of a particular belief in a religion."

On more than one occasion, the Second Circuit has declined to definitively decide whether the substantial burden test applies in <u>constitutional</u> free exercise claims, though it was clearly applied in claims brought under the now-repealed Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. 2000bb, *invalidated by City of Boerne v.Flores*, 521 U.S. 507 (1997), and also claims brought pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. 2000cc-1.  *See Salahuddin v. Goord*, 467 F.3d 263, 275 n.5 (2d Cir. 2006) (declining to definitively resolve whether the substantial burden test applies, but nevertheless assessing whether a substantial burden was imposed); *McEachin v. McGuinnis*, 357 F.3d at 201-03 (noting the uncertainty of whether the substantial burden threshold applies and declining to reach the question); *Ford v. McGinnis*, 352 F.3d at 593 (same). Such hesitation appears to stem from the notion that, "[a]pplying the substantial burden test requires courts to distinguish important from unimportant religious beliefs, a task for which [the Second Circuit] has already explained courts are particularly ill-suited [due to] the danger that courts will make conclusory judgments about the unimportance of the religious practice to the adherent[.]"  *Ford v. McGinnis*, 352 F.3d at 593 (noting the reluctance for courts to "measure the devotional import of certain religious practices).

As explained more fully herein, because Ochoa has not even established that his beliefs are both religious and sincerely held, we need not grapple with whether a substantial burden has been imposed, though we think it is clear from our analysis that no substantial burden, defined as a "situation where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs" has occurred here.  *See McEachin v. McGuinnis*, 357 F.3d at 202 n.4 (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).

In the sincerity analysis, courts "seek[] to determine an adherent's good faith in the expression of his religious belief." *Patrick v. LeFerve*, 745 F.2d at 157 (quoted in *Keesh v. Smith*, 2006 WL 516793, at *3 (N.D.N.Y. Mar. 2, 2006)). "This test provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Id.* (quoted in *Ford v. McGinnis*, 352 F.3d at 588). Ochoa fails to allege the nature and content of his beliefs, how he came to hold them, and what difference they have made in his life. Ochoa does not describe his participation in other religious activities such as Sabbath observances, dietary strictures, religious meetings, holy feast days, or other significant religious activities to which he purportedly adheres to so that we may comfortably determine that he has pled enough facts to establish that his beliefs are both religious and sincerely held. *See Jackson v. Mann*, 196 F.3d at 320.[11]  In fact, Ochoa provides absolutely no information regarding his religious beliefs. While he alleges that his prayer was interrupted, he gives no explanation as to the type of prayer, the time of day, how many instances of interruption, and/or the importance of the particular prayer. He simply alleges an interruption of private prayer in his cell.

But, even if we were to presume that Plaintiff adheres to the Muslim faith, and further presume that his desire to pray is a sincerely held religious belief, it is nevertheless clear that his right to freely exercise this sincere belief is subject to restriction in the prison environment.

---

[11] Though *Jackson v. Mann* was decided at the summary judgment phase, we find the analysis provides incite into what information would be helpful in determining whether a belief is religious and sincerely held, and perhaps the type of information that should be pled in order to state a viable claim. In the *Jackson* case, the Second Court found that Plaintiff's proffered evidence raised a genuine issue of material fact as to whether his religious beliefs were sincerely held. Such evidence included prison documentation that "(1) listed his religious preference as Jewish; (2) showed his participation in kosher meal programs in several other correctional facilities; and (3) showed that he had actually gone without food for several days to avoid eating non-kosher food." 196 F.3d at 320. We understand that the sincerity inquiry is normally a fact-specific one and that dismissal at such an early stage could sometimes be viewed as inappropriate. However, this case, in light of the decrepit pleading, devoid of any factual allegation beyond the fact that his prayer in his cell was interrupted, is not such a case worthy of pursuit.

*-13-*

Thus, while some accommodations are to be made for a prisoner's sincerely held religious beliefs, we question whether such accommodations reasonably include converting a cell into a sacrosanct venue so that no visitor could ever trespass over the threshold of the cell doors whenever the occupant deemed it appropriate to engage in prayer.  Assuredly, it is reasonable for the prison staff to "intrude" and enter a prisoner's cell should the need arise, and as such, it cannot be gainsaid that such "trespass" is not a violation of a prisoner's First Amendment right.

Pellucidly, Plaintiff's scant pleading fails to provide enough facts to state a claim for relief that is plausible on its face.  While the Second Circuit has cautioned courts in this District from dismissing *pro se* complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated[,]" we find that no such valid claim exists and thus dismissal of this claim is appropriate.  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005) (noting that borderline cases should be allowed to proceed).  Accordingly, we recommend **granting** Defendants' Motion for Judgment on the Pleadings as to Ochoa's First Amendment Free Exercise claim against Defendant Evans.

### D.  Retaliation Claims

Ochoa claims that on June 6, 2005, Defendant Evans issued Plaintiff a retaliatory Misbehavior Report.  Am. Compl. at ¶ 8.  He further asserts that On June 10, 2005, Defendant Engelbrecht assaulted him as retaliation for "writing up" Defendant Evans.  *Id*. at ¶ 10.  These sentiments, however, are only included in the "Facts" portion of the Amended Complaint and not in the "Legal Claims" section.  Nevertheless, in light of his bare allegations, this Court liberally construes the Amended Complaint to raise First Amendment retaliation claims against both

Defendants Evans and Engelbrecht.[12]

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to false misbehavior charges or be harassed in retaliation for the exercise of a constitutional right. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)); *see also Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) (alleging false disciplinary report).

As retaliation claims may be easily fabricated by inmates, courts have scrutinized such claims with extra care. *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 467-68 (S.D.N.Y. 1998). In *Flaherty v. Coughlin*, the Second Circuit described three different methods of pleading a retaliation claim, each requiring a separate analysis by the courts. 713 F.2d 10, 13 (2d Cir. 1983). First, a retaliation claim supported by "specific and detailed allegations" must be pursued with full discovery. *Id*. (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997)). Whereas, a claim asserting

---

[12] In any event, Plaintiff's failure to allege that other Defendants were personally involved in the retaliatory conduct is fatal to his attempt to assert such a blanket claim against all Defendants. *See McKinnon v. Patterson*, 568 F.2d at 934; *see also Polk County v. Dodson*, 454 U.S. at 325 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 674).

Nevertheless, we have construed Ochoa's Amended Complaint to raise a complaint of excessive force, in violation of the Eighth Amendment, against Defendant Engelbrecht, which we address later in this opinion. *See infra* Part II.F.

retaliation in "wholly conclusory terms may safely be dismissed on the pleadings alone." *Id*. ("In such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."). The third situation involves a complaint alleging facts that give rise to a "colorable suspicion of retaliation." *Id*. This third type of case will support at least documentary discovery. *Id.*

As with the previous cause of action, in attempting to state a claim for relief, Plaintiff fails to provide the Court with enough information, thereby putting the onerous on this Court to liberally construe the pleading. Notwithstanding the Court's lenient eye, it is clear that Plaintiff's retaliation claims are stated in wholly conclusory terms without any factual bases and thus may be dismissed on the pleadings alone.

First, with regard to Defendant Evans, we note that Plaintiff has not alerted the Court to the constitutionally protected activity he purportedly engaged in which formed the basis for Evans' alleged retaliation. Perhaps Plaintiff is of the opinion that the barrage of letters he authored, which he attaches as Exhibits, were the basis for such retaliation. However, many of these letters are dated, and therefore presumably authored, <u>after</u> Evans issued the Misbehavior Report. In fact, in these letters, he makes reference to Evan's Misbehavior Report. And, for the minimal letters that pre-date the issuance of the Report, Ochoa gives no indication as to whether and how Evans was aware of the existence of such letters. The diluted causal connection between Ochoa's letter writing and the June 6th Misbehavior Report lends further credence to our determination that this retaliation claim is suspect and properly dismissed. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted) (acknowledging that retaliation claims are prone to abuse and therefore should be examined "with skepticism and particular care"); *see also Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any

adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)).

Furthermore, even if we were to stretch every avenue of the imagination and find that Plaintiff ekes out a retaliation claim worthy of pursuing discovery, given the fact that he never claims the Misbehavior Report was unfounded, his retaliation claim would nevertheless flounder since it is uncontested that a prison rule was violated on June 6th and thus, Defendant Evans would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997)).

With regard to Defendant Engelbrecht, while Ochoa alerts us to the purported protected activity he engaged in which formed the basis for the retaliation, that is the filing of a grievance against Defendant Evans, Ochoa's cause of action is nonetheless flawed.  Since in his Amended Complaint Ochoa neglected to provide any information regarding the Grievance he filed against Evans, this Court had to parcel through the 180 pages of Exhibits to find that particular Grievance. Once we located such Grievance, we observed that it is hand-dated June 9, 2005, but date-stamped "Received" on June 14, 2005, while the purported assault took place on June 10, 2005, four days **prior** to the facility's receipt of Ochoa's grievance.  Thus, at the time Engelbrecht is alleged to have assaulted Ochoa, no grievance had been filed with the Inmate Grievance Committee and, absent any allegation that Engelbrecht was somehow aware of the altercation and/or a drafted Grievance, Ochoa fails to point to any protected activity he engaged in which forms the basis for the retaliatory attack.

*-17-*

In any event, even if we were to find that Plaintiff engaged in protected activity by making complaints about Defendant Evans and further assume that Defendant Engelbrecht was somehow aware of the rift between Ochoa and Evans, Ochoa's own written words provide the downfall for his retaliation cause of action.  Though he asserts in his Amended Complaint that the assault was unprovoked, in Grievance # ONI-9135-05,[13] Ochoa describes a situation wherein Engelbrecht gave Ochoa a direct order, which Ochoa admittedly disobeyed.  Dkt. No. 11-2 at p. 36 (Grievance # ONI-9135-05) ("I was told to remove my shirt [and] when I started to do so I was assaulted because I did not wait to hear the word move.").  Thus, Ochoa's self-proclaimed failure to follow frisk procedures could easily have formed the basis for Defendant Engelbrecht's use of force, which incidentally by Ochoa's own description classifies as the type of *de minimis* force properly utilized by prison staff to restore order and discipline.  *See infra* Part II.F.  As such, this claim is subject to dismissal.

Again, though we are mindful of the Second Circuit's policy of providing an opportunity to amend, we believe that in light of the patent frivolousness of these retaliation claims, such accommodation should not be extended to Plaintiff.  Accordingly, we recommend **granting** Defendants' Motion as to retaliation claims against Defendants Evans & Engelbrecht.

### E.  Access to the Courts

Ochoa asserts he was denied access to the Yellow Pages and was therefore unable to locate an attorney.  He also asserts he was denied the opportunity to have an unmonitored legal conversation with an attorney.  In liberally construing Plaintiff's pleading, we find that the best constitutional claim that can be drawn from his accusations is that he was denied the right of access

---

[13] In fact, this Grievance regarding the alleged retaliatory assault was actually received by the Inmate Grievance Committee **prior to** the Grievance Ochoa filed against Defendant Evans.  *Compare* Dkt. No. 11-2 at p. 18 (Grievance # ONI-9137-05, date-stamped "Received" June 14, 2005) *with* Dkt. No. 11-2 at p. 36 (Grievance # ONI-9135-05, date-stamped "Received" June 13, 2005).

to the courts.

In order to state a claim for denial of access to the courts, a plaintiff must allege that the defendant caused actual injury, *i.e.*, the defendant "took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (further citations omitted); *see also Cancel v. Goord*, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  Nowhere in Plaintiff's Amended Complaint does he assert that a legal claim was hindered in any way or that any Defendant acted maliciously in denying him access to the courts. *See Lewis v. Casey*, 518 U.S. at 351 (noting that an inmate must show he suffered an actual injury in that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials).  In fact, the individuals who purportedly refused to grant Plaintiff's requests are not named as Defendants in this action.[14]

To the extent Plaintiff alleges Defendants Flisnik and Connell denied him access to the courts when they denied him the ability to have an unmonitored legal call, again, Ochoa fails to assert that a valid, non-frivolous legal claim was stymied by the Defendants' actions; nor does he allege that Defendants Flisnik and Connell acted maliciously.  In fact, Plaintiff states that Defendant Flisnik attempted to enable Plaintiff's ability to speak with an attorney by suggesting that he place the attorney's name on his call list.

In sum, Plaintiff has failed to assert any facts which if true raise a plausible cause of action for denial of access to the courts.  With regard to this cause of action, Plaintiff has already been

---

[14] Since Plaintiff failed to specifically identify in his Amended Complaint the individual who denied him access to the courts, this Court had to, once again, parse through his Exhibits until we located the letters from the facility library administrators, none of which are Defendants in this action.

granted an opportunity to amend so as to cure the legal deficiencies.  As Plaintiff has already failed to take advantage of this courtesy provided by the Court, no such opportunity to amend need be re-extended.  As such, we recommend **granting** Defendants' Motion as it pertains to this claim.

### F.  Eighth Amendment Claims

In liberally construing Plaintiff's Amended Complaint, it appears that Plaintiff raises two different Eighth Amendment claims.  First, Plaintiff asserts that Defendant Engelbrecht exhibited excessive force against him when he struck Plaintiff in the head with his forearm.  Second, Plaintiff asserts that Defendants LaGasse, Wyborski, and Engelbrecht exposed Plaintiff to inhumane living conditions when, on various dates, they collectively or individually denied him access to the showers and mandatory rec.[15]

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)).  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (cited in *Trammell v. Keane*, 338 F.3d at 162).

To prove a violation of the Eighth Amendment, an inmate must show,

> (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities," and (2) that the defendant official possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain."

---

[15] Again, Plaintiff fails to specify against whom his Eighth Amendment claims are asserted.  Nevertheless, his failure to allege that other Defendants were personally involved in the alleged excessive force and/or denial of rec and showers is fatal to his attempt to assert such a blanket claim against all Defendants.  *See McKinnon v. Patterson*, 568 F.2d at 934; *see also Polk County v. Dodson*, 454 U.S. at 325 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 674).

*Trammell v. Keane*, 338 F.3d at 161 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Thus, there are two components to any Eighth Amendment cause of action: an objective component

regarding the particular act and a subjective component which focuses on the particular defendant's

state of mind.  We first address Ochoa's claim against Defendant Engelbrecht for excessive force.

      In reviewing allegations of excessive force, the key inquiry for a court is "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312,

321-22 (1986); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).  "Not every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights."  *Johnson v. Glick*, 481 F.2d at 1033 (quoted in *Hudson v. McMillian*, 503 U.S.

at 10).  In fact, specifically excluded from the list of prohibited conduct under the Eighth

Amendment are *de minimis* uses of physical force, "provided that the use of force is not of a sort

repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. at 10 (internal quotation

marks and citations omitted).  Plainly put, in taking everything Plaintiff alleges as truth, we find

ourselves in total agreement with Defendants' summation in that "the situation [P]laintiff depicts

does not nearly approach the sort of savage, sadistic physical abuse required to support liability[.]"

Dkt. No. 37, Defs.' Mem. of Law at p. 11.  Accordingly, Plaintiff doesn't even get past the first

prong of his Eighth Amendment claim against Defendant Engelbrecht.

      Incidentally, even if we were to continue on to the subjective prong, we would similarly find

that  Plaintiff fails to state a cognizable cause of action for excessive force as he fails to allege that

Defendant Engelbrecht acted with a sufficiently culpable state of mind.  To determine whether a

defendant acted maliciously, several factors should be examined including, "the extent of the injury

and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).  Here, Ochoa merely states that Engelbrecht hit him as retaliation for "writing up his co-worker[,] Defendant Evans." Am. Compl. at ¶ 10.  Conspicuously absent from Ochoa's pleading is any allegation, intimation, or basis to infer that Engelbrecht acted with the requisite scienter of causing harm.  As explained above, Ochoa's own description of the frisk scene is that of an inmate who did not obey a direct order and a correction officer who used minimal force to restore order and discipline. *Cf. Kalwasinski v. Artuz*, 2003 WL 22973420, at *8 (S.D.N.Y. Dec. 18, 2003) ("[W]hen use of force furthers no penological interest, even a *de minimis* use of force is wanton and so violates that Eighth Amendment protections.").  Since Ochoa can satisfy neither the objective nor subjective prong of his Eighth Amendment claim, it is subject to dismissal.

We next turn to Plaintiff's Eighth Amendment claims against Defendants LaGasse, Wyborski, and Engelbrecht wherein Ochoa asserts he was subjected to cruel and unusual punishment when Defendants denied him access to showers and rec.  As with the excessive force claim, to prove that a prison condition amounted to cruel and unusual punishment, a plaintiff must satisfy both an objective and subjective standard.  To satisfy the objective test, a plaintiff must show that the conditions of his confinement resulted in "unquestioned and serious deprivations of basic human needs" or "deprive[d] inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (quoted in *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)); *see also Stokes v. Goord*, 2007 WL 995624, at *4 (N.D.N.Y. Mar. 30, 2007).  And, in

satisfying the subjective prong, a plaintiff must allege deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834.

Ochoa asserts Defendent Wyborski denied him a shower on May 28, May 30, July 2, July 15, and July 30, 2005.  Am. Compl. at ¶ 10.  He further asserts that Defendants Lagasse and Engelbrecht denied him recreation on June 29, June 30, July 1, July 2, July 4, July 18, July 19, July 29, July 30, July 31, and August 1, 2005.  *Id.*  As a matter of law, temporary denial of showers and recreation cannot provide the basis for an Eighth Amendment claim.  *See Ford v. Phillips*, 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007) (citing cases and holding that a denial of shower and recreation on five separate occasions did not amount to an Eighth Amendment violation); *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (denial of shower privileges for one day does not amount to cruel and unusual punishment) (further citing, *inter alia*, *Cosby v. Purkett*, 782 F. Supp. 1324, 1329 (E.D. Mo. 1992) for the proposition that an allowance for one shower every seventy-two hours does not implicate the Eighth Amendment); *Arce v. Walker*, 907 F. Supp. 658, 662-63 (W.D.N.Y.), *aff'd in part and remanded in part on other grounds by* 139 F.3d 329 (2d Cir. 1998), (the failure to exercise outside one's cell for six consecutive days and then for twelve consecutive days does not constitute an Eighth Amendment violation); *Gibson v. City of New York*, 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) (denial of exercise for eight days in a sixty-day period does not violate the Eighth Amendment); *Chapple v. Coughlin*, 1996 WL 507323, at *2 (S.D.N.Y. Sept. 5, 1996) (denial of shower and recreation for three days did not amount to an Eighth Amendment violation); *but see Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (holding a denial of outdoor recreation for fourteen days did not implicate the Eighth Amendment but further noting that had the prisoner been denied exercise for thirty days, a close constitutional

-23-

question would have been presented); *Williams v. Goord*, 142 F. Supp. 2d 416, 426 (S.D.N.Y. 2001) (citing, *inter alia*, *Davidson v. Coughlin*, for the proposition that a denial of "meaningful" exercise for twenty-eight days is a "close constitutional case" better left to a jury). Therefore, we find that the sporadic denial of showers on five separate occasions and recreation on eleven separate occasions do not amount to Eighth Amendment violations.

Accordingly, we recommend **granting** Defendants' Motion as to the Eighth Amendment claims asserted against Defendants Wyborski, LaGasse, and Engelbrecht.

### G.  Standard for Frivolous Lawsuits

At the time Plaintiff initiated this action he sought permission to proceed *in forma pauperis* (IFP) and his request was granted by Judge Sharpe. Dkt. Nos. 2 & 8. In accordance with the statute governing actions brought IFP, a court **shall** *sua sponte* dismiss a case filed *in forma pauperis* "if at any time the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted[.]" 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) (emphasis added); *see also Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998); *Nance v. Kelly*, 912 F.2d 605 (2d Cir. 1990) (*per curiam*). Courts must proceed cautiously when reviewing a complaint pursuant to the authority granted by 28 U.S.C. § 1915(e) since a claim which the court perceives would be unsuccessful is not akin to a frivolous claim or one that fails to state a claim. *See Livingston v. Adirondack Beverage Co.*, 141 F.3d at 437 ("[W]hen an *in forma pauperis* plaintiff raises a cognizable claim, his complaint may not be dismissed *sua sponte* for frivolousness under § 1915(e)(2)(B)[(i)] even if the complaint fails to flesh out all of the requisite details." (internal quotation marks and citations omitted)). The Supreme Court explained that there are two instances where such a dismissal is warranted. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Welch*

*-24-*

*v. Galie*, 207 F.3d 130, 131 (2d Cir. 2000).  First, when the "factual contentions are clearly baseless," for example, where the allegations are the product of delusion or fantasy, dismissal is warranted.  *Neitzke v. Williams*, 490 U.S. at 327-28.  The second instance is where the claim is "based on an indisputably meritless legal theory."  *Id*. at 327.  "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curium*), or a dispositive defense clearly exists on the face of the complaint.  *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995)."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d at 437.

While it is proper for a court to exercise its *sua sponte* power under § 1915(e) prior to issuing service of process, thus sparing the defendant the economic inconvenience of answering a patently frivolous suit, the Second Circuit has made it clear that such dismissals should not be entered into lightly.  *See Cargill v. Casey*, 1996 WL 227859, at *1 (N.D.N.Y. May 2, 1996) (citing *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983)).  In this regard, Judge Sharpe performed the initial § 1915(e) review and provided Ochoa an opportunity to cure the legal deficiencies presented by his *pro se* Complaint.  Instead of curing the legal defects, Plaintiff compounded them by adding more patently baseless causes of action and adding more parties.  While the amended language passed the Court's initial review, in assessing Defendants' Motion we find that in fact Ochoa did not cure the legal deficiencies and instead has asserted numerous allegations, all of which fail to state a cognizable cause of action that could provide even some of the relief sought.

Ever mindful of this Circuit's policy of leniency when perusing *pro se* claims, this Court has endeavored to read Ochoa's papers liberally and interpret them to raise the strongest arguments they suggest.  *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Burgos v.*

-25-

*Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  In doing so, the Court endured the grave task of parceling through Plaintiff's feeble pleading and his 180 pages of Exhibits, many of which were indecipherable.  This arduous task was needlessly complicated by the fact that Plaintiff's Amended Complaint contained a paucity of factual statements.  Thus, the onus was placed on this Court to juxtapose Plaintiff's denuded factual statements with his multitudinous, coalesced, and conflated Exhibits so that the strongest arguments suggested therein could be assessed as to their endurance and viability.  As indicated throughout this opinion, even with the Court's indulgent construction, Ochoa woefully failed to present enough facts to establish <u>any</u> plausible cause of action.  To illustrate Plaintiff's feeble attempt to bring a feasible civil rights action, we summarize the allegations contained in Plaintiff's Amended Complaint:

1) Defendant Evans violated Ochoa's right to freely exercise his unstated, unspecified religious beliefs when Evans, at some point in time, walked into Ochoa's cell while Ochoa was praying and uttered racist and biased comments.  We have interpreted this claim as raising a free exercise claim under the First Amendment;

2) Defendant Evans then issued a retaliatory Misbehavior Report due to a barrage of letters Plaintiff wrote to various outside agencies, despite the fact that many of these letters were dated after the Misbehavior Report was written and despite the absence of any indication that Defendant Evans was aware of such letters.  We have interpreted this claim as raising a retaliation claim under the First Amendment;

3) Defendant Connell denied Plaintiff's Grievance regarding Defendant Evans;

4) certain unnamed individuals denied Plaintiff access to a phone book so that he could locate an attorney for some unknown reason.  We have interpreted this claim as raising a claim under the First and Fourteenth Amendments regarding impeded access to the courts;

5) Defendants Flisnik and Connell denied Plaintiff the opportunity to make an unmonitored, legal call.  We have also interpreted this claim as raising a claim under the First and Fourteenth Amendments regarding impeded access to the courts;

**6)**     Defendant Engelbrecht assaulted Plaintiff as retaliation for writing up Defendant Evans, despite the fact that the subject Grievance was not filed at the time Plaintiff was allegedly assaulted and without any indication that Engelbrecht was aware of the rift between Plaintiff and Evans or of any drafted Grievance.  We have interpreted this claim as raising a First Amendment retaliation claim and an Eighth Amendment claim of excessive force; and

**7)**     Defendants Engelbrecht, Wyborski, and LaGasse denied Plaintiff access to showers and recreation on various dates.  We have interpreted these claims under the Eighth Amendment.

As required, in addition to liberally construing the above claims, we've also taken everything Ochoa says as true.  And yet, despite our forbearance, it is patently clear, as explained fully above, that not one of Plaintiff's claims has an arguable basis in the law.[16]  Ochoa has already been granted an opportunity to amend his Complaint to cure the deficiencies Judge Sharpe clearly identified.  Instead of heeding Judge Sharpe's guidance, Ochoa retorted with a pleading based upon indisputably meritless legal theories.  While we acknowledge that the Second Circuit prefers we provide plaintiffs the opportunity to amend, in light of the fact that Plaintiff has already had an opportunity to do just that, and because we find that no valid claim exists within Plaintiff's factual allegations and immense Exhibits, we find that providing Ochoa with another opportunity to amend would result in further delay of this clearly frivolous action and is unjustified and unwarranted.  *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (court should allow leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated); *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000) (vacating and remanding district court's § 1915(e) dismissal due to the court's failure to provide plaintiff with an opportunity to amend).  It is for these reasons that we find dismissal pursuant to §§ 1915(e)(2)(B)(i) & (iii) is appropriate.

---

[16] The only claim that possibly states a claim on its face is the excessive force claim against Defendant Engelbrecht.  However, such claim was nevertheless deemed fallible due to Plaintiff's own recitation of the events which depict a situation where Ochoa disobeyed a direct order and Engelbrecht used only the force necessary to restore order.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Judgment on the Pleadings (Dkt. No. 37) be **GRANTED** and Plaintiff's entire Amended Complaint be **DISMISSED**; and it is further

**RECOMMENDED**, that the dismissal of the Amended Complaint be pursuant to  28 U.S.C. §§ 1915(e)(2)(B)(i) & (iii) as frivolous and fails to state a cause of action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   September 25, 2007
          Albany, New York


RANDOLPH F. TREECE
United States Magistrate Judge

*-28-*